IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | |
| Plaintiff | : | CIVIL NO. 1:CV-14-1055 |
| v. | : | (Judge Rambo) |
| **JESSICA SAGE, et al.,** | : | |
| Defendants | : | |

# M E M O R A N D U M

## I. Background

On June 2, 2014, Plaintiff Kareem Hassan Milhouse, an inmate currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed this *pro se Bivens*[1]-styled complaint pursuant to 28 U.S.C. § 1331. (Doc. 1.) Named as Defendants are the United States, the Federal Bureau of Prisons ("BOP"), and various prison officials from USP-Lewisburg. In the complaint, Plaintiff claims that Defendants violated his constitutional rights by denying him treatment for his mental illness. Along with his complaint, Plaintiff has submitted a motion requesting leave to proceed *in forma pauperis*. (Doc. 4.) The BOP has filed a response to Plaintiff's motion, (Doc. 10), and Plaintiff has

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relief upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

replied, (Doc. 13). For the reasons set forth below, the complaint will be dismissed without prejudice pursuant to the provisions of 28 U.S.C. § 1915(g).

## II.     Discussion

The Prison Litigation Reform Act of 1996 ("PLRA"), in an effort to halt the filing of frivolous inmate litigation, enacted what is commonly referred to as the "three strikes" provision. Codified at 28 U.S.C. § 1915(g), the "three strikes" rule provides that an inmate who has had three prior actions or appeals dismissed as frivolous, malicious, or for failing to state a viable claim, may not proceed in a civil action *in forma pauperis* "unless the prisoner is in imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). The "imminent danger" exception to § 1915(g)'s "three strikes" rule is available "for genuine emergencies," where "time is pressing" and "a threat is real and proximate." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). "Imminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. *Abdul-Akbar*, 239 F.3d at 312.

Dismissals of actions entered prior to the effective date of the PLRA are counted toward the "three strikes" referred to in 28 U.S.C. § 1915(g). *See Keener v. Pa. Bd. of Prob. & Parole*, 128 F.3d 143, 144-45 (3d Cir. 1997) (holding that dismissals based on frivolousness before 1996 "are included among the three that

establish the threshold for requiring a prisoner to pay the full docket fees unless the prisoner can show s/he is 'under imminent danger of serious physical injury'"). The "three strikes" provision does not bar disqualified inmates from filing additional actions, but it does deny them the opportunity to proceed under *in forma pauperis*, requiring inmates to pay the full filing fee prior to commencing suit.

Here, there is no question that Plaintiff has filed no less than four (4) civil actions or appeals in this court, the Eastern District of Pennsylvania, the Third Circuit Court of Appeals, and courts in other jurisdictions, since 1996. Many of these actions were dismissed on grounds that they were frivolous or failed to state a claim upon which relief may be granted. *See Milhouse v. Levi*, No. 07-4048 (3d Cir. Mar. 26, 2008); *Milhouse v. Arbasak, et al.*, Nos. 09-2709 & 2858 (3d Cir. Apr. 28, 2010); *Milhouse v. Bledsoe, et al.*, Civ. No. 1:10-CV-0053 (M.D. Pa. Oct. 6, 2010); *Milhouse v. Levi*, Civ. No. 2:09-CV-5363 (E.D. Pa. Nov. 24, 2010); *Milhouse v. Jordan, et al.*, Civ. No. 1:09-CV-1365 (M.D. Pa. Feb. 14, 2011). In addition, Plaintiff does not dispute the fact that he has brought three or more actions or appeals in the federal courts that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (*See* Doc. 4.) *See also Milhouse, v. Holt*, Civ. No. 1:12-CV-1286 (M.D. Pa. Aug. 1, 2012) (complaint dismissed without prejudice due to Plaintiff's three strikes); *Milhouse v. O'Brien*, Civ. No. 1:14-CV-0016 (N.D. W.V. May 9, 2014) (order adopting report and

recommendation for dismissal of complaint without prejudice due to Plaintiff's three stikes).

Turning to Plaintiff's present action, in his complaint Plaintiff alleges that, at some point possibly in 2008, a federal judge in the Eastern District of Pennsylvania recommended that Plaintiff receive mental health treatment. (Doc. 1 at 2.) Further, he alleges that he currently has a mental health diagnosis of depression, an Axis I mental illness,[2] and that he has attempted suicide twice, in February and April of 2014, respectively. (*Id*. at 2.) Plaintiff claims, however, that, since he arrived at USP-Lewisburg on April 28, 2014, he has not been seen by any psychologists, despite his mental health diagnosis. (*Id*. at 2, 7.) He further claims that, while the psychology staff did several rounds through his housing unit on May 1, 8, 15, and 21, 2014, no one stopped to talk to him when he requested assistance. (*Id*. at 3.) He also claims that various administrative staff failed to respond to his grievances regarding medical treatment for his mental illness. (*Id*. at 4-5.)

In his application to proceed *in forma pauperis*, Plaintiff has provided the following details as to why he is "under imminent danger of serious physical injury":

---

[2] While neither party informs the court of the definition of an "Axis I mental illness," from the record the court gathers that an "Axis I" level is more severe than an "Axis II" level of illness, as explained by the BOP. (*See* Docs, 1, 10.)

>Petitioner has a current mental illness diagnosis of depression which is a Axis 1 mental health illness that [can] cause death untreated. Plaintiff is not currently on medication nor have he received no therapy sessions nor new medication although it's a substantiated history that the last medication did not help and Plaintiff attempted suicide.

(Doc. 4 at 2.)

The BOP's response to Plaintiff's allegation of imminent danger indicates that Plaintiff arrived at USP-Lewisburg on April 28, 2014.  (Doc. 10 at 2.)  On May 14, 2014, Dr. O'Shaughnessy performed a Psychology Services Transfer Intake Screening of Plaintiff.  (*Id*.; Doc. 10-1, O'Shaughnessy Decl.)  Dr. O'Shaughnessy noted that Plaintiff has an extensive history of contacts with Psychology Services while incarcerated, including suicide risk assessments, medication evaluations, and sexual abuse interventions.  (*Id*.; Doc. 10-1 at 4.)  Those claims have been determined to be unfounded.  (Doc. 10 at 2.)  In addition, it was noted that Plaintiff has management issues in terms of his behavior, but does not have any Axis I mental health concerns.  (*Id*. at 3; Doc. 10-1 at 4.)  Rather, Plaintiff has a diagnosis of an Axis II antisocial personality disorder.  (Doc. 10 at 3; Doc. 10-1 at 6.)  Further, Plaintiff has been designated as a "care level I mental health" inmate, requiring the lowest level of mental health services.  (Doc. 10 at 2; Doc. 10-1 at 4.)

According to the BOP, Axis II disorders refer to personality disorders that, for the most part, manifest significant impairment in how someone relates to the

world. (Doc. 10 at 3.) Only those with long-term rigid, inflexible, pervasive, and exaggerated traits can be diagnosed with such a personality disorder. (*Id*.) Further, another important distinction is that people with personality disorders do not perceive their problems to be related to themselves. (*Id*. at 4.) They are "ego-syntonic," meaning they say, "There's nothing wrong with me. Everyone else is the problem!" (*Id*.) In addition, Axis II personality disorders cannot be cured. (*Id*.) Treatment generally does not include medication; rather, counseling and other non-pharmacologic interventions are used. (*Id*.)

On June 2, 2014, Plaintiff was seen by Dr. Jessica Sage in connection with his allegations of an assault on May 8, 2014. (Doc. 10 at 3; Doc. 10-1 at 6.) Plaintiff did not display any overt symptoms of acute emotional distress or trauma-related mental health problems at the evaluation. (Doc. 10-1 at 6.) In addition, he specifically stated that he was "maintaining" and denied any psychological concerns or issues. (*Id*.) He was well kept, alert, and displayed no signs of fatigue. (*Id*.) Further, his thought process was linear and logical, while the content was goal-directed (manipulative). (*Id*.) He also agreed to contact Psychology Services if needed. (*Id*.)

On June 5, 2014, Dr. O'Shaughnessy evaluated Plaintiff again. (Doc. 10 at 4; Doc. 10-1 at 8.) Upon his review, Dr. O'Shaughnessy noted no significant mental health problems. (Doc. 10-1 at 8.) He also found Plaintiff's current risk of self-harm to be low, and the current potential for harm to others to be moderate.

(*Id*.) Plaintiff agreed to contact Psychology Services as needed. (*Id*.) Dr. O'Shaughnessy noted that Plaintiff is not receiving any medication related to mental illness, nor does his mental health status warrant medication intervention at this time. (*Id*. at 2.) Further, he concluded that Plaintiff's mental health is stable and he is in no risk of imminent harm related to mental health issues. (*Id*.)

In his reply to the BOP's response, Plaintiff first claims that Dr. O'Shaughnessy's declaration outlining Plaintiff's mental health evaluations at USP-Lewisburg is a "total fabrication" because Plaintiff was not seen on May 14, 2014 or June 5, 2014. (Doc. 13 at 1.) Plaintiff requests that the court view surveillance videotape of his cellblock from May 14, 2014 and June 5, 2014, in order to confirm Dr. O'Shaughnessy's "perjury." (*Id*.) Plaintiff also claims that, even though Dr. Sage was present when he was interviewed by prison officials about the alleged May 8, 2014 assault, she did not interview him. (*Id*. at 1-2.) With respect to his diagnosis of an Axis II antisocial personality disorder only, Plaintiff asserts that the records show he was, in fact, also diagnosed with an Axis I depression disorder, a more severe disorder that can cause death if untreated. (Doc. 1 at 2.)

Reviewing the complaint, as well as Plaintiff's allegations in his *in forma pauperis* application and the BOP's response and Plaintiff's reply thereto, the court finds that Plaintiff does not satisfy the imminent danger exception to the "three strikes" rule. Plaintiff's imminent danger allegation is based on his alleged

7

diagnosis of an Axis I depression disorder that he claims if left untreated can cause death. First, to the extent that Plaintiff is claiming that he is in imminent danger of "psychological injury" because he finds the mental health consultations at USP-Lewisburg to be inadequate, he fails to satisfy the imminent danger exception. "[T]here is no exception to the Three Strikes Rule based upon a showing of an imminent danger of a serious *psychological* injury; rather, to fall within the exception to the Three Strikes Rule, [a plaintiff] must show an imminent danger of serious *physical* injury." *Cardona v. Bledsoe*, Civ. No. 3:11-CV-0054, 2011 WL 1832777, at *5 (M.D. Pa. May 12, 2011) (emphasis in original). In this case, Plaintiff has failed to demonstrate how the allegedly inadequate mental health care he is receiving at USP-Lewisburg places him in imminent danger of serious physical injury. Nor has he shown how an Axis I mental health diagnosis places him in that same imminent danger.

Second, to the extent that Plaintiff attempts to identify threats to his physical well-being, he has failed to identify any *imminent* threats of serious physical injury. While Plaintiff asserts that he has attempted suicide, these apparent suicide attempts occurred prior to Plaintiff's incarceration at USP-Lewisburg, and Plaintiff has failed to articulate how these past alleged events posed an imminent danger of serious physical injury as of the time he filed his complaint. Seemingly in support of his attempt to identify a threat to his physical well-being, Plaintiff attaches to his reply a Suicide Risk Assessment report completed in August 2012 by officials at

USP-Allenwood, one of Plaintiff's former places of incarceration. (Doc. 13 at 38-40.) In that report, Plaintiff's history was noted as follows:

> Millhouse has been on suicide watch several times in the past, while in BOP custody. A review of records reveals the suicide watches were often precipitated by Millhouse writing letters, which contained suicidal statements, rather than following suicide attempts. Records indicate the suicidal statements were related to his desire to avoid SHU or SMU placement, in protest about the food he was receiving, and so on, rather than due to suicidal intent. Records indicate Millhouse has a history of writing letters or requests to staff which are bizarre and disjointed. He has repeatedly been assessed not to be psychotic or mentally ill, but rather has been described or diagnosed as Malingering on several occasions.

(*Id*. at 39.) Further, in that report Plaintiff was given a Diagnostic Impression of "Axis I: Malingering, by history" rather than a depression diagnosis. (*Id*.) Nevertheless, even though other exhibits attached to Plaintiff's reply indicate that Plaintiff may have had an Axis I diagnosis in the past, (*see* Doc. 13), Plaintiff has still failed to show how any past events or diagnoses pose an imminent danger of serious injury when he filed the instant complaint.

In sum, Plaintiff's allegations that he is in imminent danger of serious physical harm as a result of his medical care or lack thereof, including psychological treatment, are not sufficient to satisfy the imminent danger exception to the "three strikes" rule. Therefore, because Plaintiff has failed to provide any support for his allegations that he was in imminent danger when he filed his complaint, he may not proceed in this action without prepayment of fees under

9

§ 1915(g).  Plaintiff is not entitled to proceed *in forma pauperis*, and this action will be dismissed without prejudice pursuant to § 1915(g).

An appropriate order will issue.

s/Sylvia H. Rambo          
United States District Judge

Dated:  August 18, 2014.