**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | |
| **Plaintiff** | : | **No. 1:14-cv-01055** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JESSICA SAGE, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On June 2, 2014, Plaintiff Kareem Hassan Milhouse, an inmate confined at the United

States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"), filed the instant civil rights

action <u>pro</u> <u>se</u> pursuant to 28 U.S.C. § 1331, the Federal Tort Claims Act ("FTCA"), and <u>Bivens</u>

<u>v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971),[1] as amended

September 18, 2017.  In the amended complaint, Plaintiff alleges that staff at USP-Lewisburg

and his former place of confinement, the United States Penitentiary at Hazelton ("USP-

Hazelton"), in Bruceton Mills, West Virginia, exhibited deliberate indifference to his

psychological needs by failing to treat his psychological conditions.

---

[1] 28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."  The FTCA provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates.  <u>United States v. Muniz</u>, 374 U.S. 150, 150 (1963).  In presenting a FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss.  <u>Mahler v. United States</u>, 196 F. Supp. 362, 364 (W.D. Pa. 1961), <u>aff'd</u>, 306 F.2d 713 (3d Cir. 1962), <u>cert.</u> <u>denied</u>, 371 U.S. 923 (1962).  As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by that agency.  <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official."  <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

Presently before the Court is a motion to dismiss and for summary judgment, filed by all Defendants. (Doc. No. 112.) For the reasons set forth herein, the Court will grant Defendants' motion and this case will be closed.

## I.  BACKGROUND

The amended complaint focuses on three groups of Defendants. (Doc. No. 104.) It also primarily focuses on periods of Plaintiff's incarceration in 2014 at USP-Hazelton and USP-Lewisburg. (Id.) The Court will list the groups of Defendants along with the relevant allegations in chronological order.

The first group of Defendants was allegedly involved in incidents occurring around late February and early March, 2014, and consists of individuals employed at USP-Hazelton. Plaintiff claims that, as a direct result of these individuals' inadequate psychological care, Plaintiff attempted suicide and was hospitalized from February 28, 2014 to March 3, 2014. (Id. at 2-3.) The named Defendants are as follows: (1) Thomas Fanning, chief psychologist; (2) Cynthia Ivy, psychologist; (3) Laura Ennis, psychologist; (4) Nina Brathwaite, psychologist; (5) Gregory Mims, former clinical director / medical doctor; (6) Christopher Meyer, certified physician assistant; (7) John Pyles, nurse practitioner; (8) Terry O'Brien, former warden; and (9) W. Odom, former associate warden. (Id. at 3.) As to the former warden and associate warden, Plaintiff claims that they failed to remedy the inadequate psychological care provided to Plaintiff. (Id.)

The second group of Defendants consists of the following individuals employed at USP-Lewisburg: (1) Jessica Sage, chief psychologist; (2) Danielle Mink, psychologist; (3) M. O'Shaughnessy, psychologist; (4) Rachel Eigenbrode, psychologist; (5) Jennifer Enigk, psychologist; (6) Kevin Pigos, former clinical director/medical doctor; (7) Andrew Edinger,

medical doctor/clinical director; (8) David Ebbert, warden; and (9) T. Jusino, associate warden. Plaintiff alleges that from April to June, 2014, these individuals either denied Plaintiff mental health care or falsified and fabricated Plaintiff's mental health records to reflect inaccurate information pertaining to Plaintiff's care. (Id. at 2-3.) As to the warden and associate warden, Plaintiff claims that they ignored the evidence of inadequate mental health care and failed to resolve Plaintiff's complaints regarding the same. (Id. at 3.)

The third group of Defendants consists of the United States, the Federal Bureau of Prisons, and "John Does 1-2." (Id. at 2.) The amended complaint does not set forth any allegations specifically directed at these entities. The apparent basis for naming the United States is that it is allegedly liable under the FTCA for wrongful acts committed by prison staff at USP-Hazelton and USP-Lewisburg. However, the Court will summarily dismiss the case as it relates to the Federal Bureau of Prisons because claims against a federal agency are not cognizable under the FTCA or Bivens. FDIC v. Meyer, 510 U.S. 471, 473 (1994); Dambach v. United States, 211 F. App'x 105, 108 (3d Cir. 2006); 28 U.S.C. § 2679(a). Further, the Court will also summarily dismiss "John Does 1-2," as Plaintiff has failed to provide the Court with their identities and addresses for purposes of service of his amended complaint. See Fulton v. United States, 198 F. App'x 210, 214 (3d Cir. 2006) (stating plaintiff is responsible for identifying the parties named as defendants in order to effectuate service); see also Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served . . ."); Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the [C]ourt – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant . . . .").

As relief Plaintiff requests compensatory damages from all Defendants in the total amount of $527,500,000.00. (Id. at 4.) Plaintiff also requests punitive damages in the total amount of $220,000,000.00. (Id.)

On February 12, 2018, Defendants filed the instant motion to dismiss and for summary judgment. (Doc. No. 112.) After the Court granted Plaintiff several extensions of time to file a brief in opposition to Defendants' motion (Doc. Nos. 132, 140, 158), Plaintiff has, to date, failed to file a responsive brief. Consequently, the motion to dismiss and for summary judgment is ripe for disposition.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted).

In resolving a motion to dismiss, the Court thus "conduct[s] a two-part analysis." Fowler, 578 F.3d at 210. First, the Court separates the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, the Court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (internal quotation marks omitted).

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). In ruling on a motion to dismiss under Rule 12(b)(2), the Court is required, as with Rule 12(b)(6) motions, to accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). However, the scope of the Court's review on a Rule 12(b)(2) motion is not limited to the face of the complaint, but may include affidavits and other competent evidence submitted by the parties. Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990). The plaintiff, ultimately, bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

**B.      Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters & Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## III. STATEMENT OF MATERIAL FACTS

Defendants' statement of material facts is undisputed, in addition to being supported by ample evidentiary materials, and the Court incorporates those material facts herein by reference.[2] (Doc. No. 116.) In condensed form, those facts reveal the following:

### A. Facts Regarding Plaintiff's Exhaustion of Administrative Remedies

10. The BOP has established an Administrative Remedy Program for inmates to resolve concerns related to their confinement. [(Doc. No. 116-1, Ex. A, Jonathan Kerr Decl.)] ¶ 4; 28 C.F.R. § 542.10, et seq.

11. In order to fully exhaust administrative remedies with regard to a particular complaint, an inmate must first attempt to informally resolve his concern via an informal request to staff. 28 C.F.R. § 542.13.

---

[2] Local Rule 56.1 provides as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. LR 56.1 (emphasis added); see also M.D. Pa. LR 7.8(a) ("If counter statements of facts or questions involved are not filed, the statements of the moving party will be deemed adopted."). In the Court's Orders granting Plaintiff an extension of time to file a brief in opposition to the motion to dismiss and for summary judgment, Plaintiff was advised that, "because Defendants have filed a statement of material facts . . . with their motion to dismiss and for summary judgment, Plaintiff is reminded that, should he fail to file a counter statement of facts, the statement of material facts of Defendants will be deemed adopted." (Doc. No. 140.)

12. If an inmate is unable to resolve the complaint informally, he may file an administrative remedy request with the Warden of the institution on the proper form within 20 calendar days. 28 C.F.R. § 542.14(a).

13. If the inmate is not satisfied, he may appeal the Warden's decision, using the appropriate BP-10 form, to the BOP Regional Office within 20 calendar days. Id. ¶ 5; 28 C.F.R. § 542.15(a).

14. If the inmate is still dissatisfied, he may appeal the BOP Regional Director's response to the BOP Central Office, Office of the General Counsel, using the form BP-11, within 30 calendar days. Id.

15. If the inmate does not receive a response to his administrative remedies/appeals within the time allotted for reply, he may consider the absence of a response to be a denial at that level. Ex. A ¶ 5; 28 C.F.R. § 542.18.

16. An inmate has not fully exhausted his administrative remedies until the BOP Central Office denies his grievance. 28 C.F.R. § 542.15(a).

17. Milhouse filed a total of thirty-six administrative remedies from the time he arrived at USP Hazelton (August 28, 2012) until June 2, 2014, when he filed his original Complaint in the instant case. Id. ¶ 6; Attach. 1 (Administrative Remedy Generalized Retrieval Report). The abstract for these remedies reveals that the following administrative remedies pertain to the claims Milhouse raises in the instant case.

18. On March 26, 2014, Milhouse filed Administrative Remedy No. 772984-F1 at the institution level, alleging that "he did not receive the current mental health treatment for his issues/attempted suicide." Id.; Attach. 1 at 10.

19. On April 4, 2014, the Warden denied his administrative remedy. Id.

20. On April 15, 2014, Milhouse appealed the Warden's denial by filing Administrative Remedy No. 772984-R1 with the BOP's Mid-Atlantic Regional Office. Id., Attach. 1 at 15.

21. On May 2, 2014, the remedy was closed with an explanation. Id.

22. Milhouse did not further pursue this remedy request or otherwise appeal the regional response. Ex. A ¶ 6; Attach. 1.

23. Milhouse did not file another remedy related to any of the subject matter contained in the Complaint, before he initiated this action by filing his original Complaint on June 2, 2014.[3]  Id.

24. A review of BOP records of administrative remedies filed after Milhouse filed the original Complaint on June 2, 2014, reveals that Milhouse exhausted Administrative Remedy No. 791526 alleging that he was not receiving psychological treatment at USP Lewisburg and challenging the methodology behind which his mental health SMU reviews were conducted.[4]  Id. ¶ 7; Attach. 2 (BOP SENTRY Report, Administrative Remedy Generalized Retrieval) at 4.

25. He initiated Administrative Remedy No. 791526-F1 on August 25, 2014, approximately three months after he filed the original Complaint.  Ex. A ¶ 7; Attach. 2 at 3.

(Doc. No. 116 ¶¶ 10-25.)

### B.    Facts Regarding Plaintiff's Administrative Tort Claims

26. A review of the BOP Content Manager Administrative Tort System reveals that Milhouse did not file any Administrative Tort Claim related to the USP Hazelton allegations set forth in the complaint.  Id. ¶ 8.

27. Plaintiff filed two (2) Administrative Tort Claims analogous to the allegations contained in the complaint related to USP Lewisburg, but both claims were filed after June 2, 2014, when the original Complaint was prematurely filed.  Id.

28. On July 31, 2014, Milhouse filed Administrative Tort Claim Number TRT-NER-2014-05462, with the BOP Northeast Regional Office requesting a sum certain of ten-million ($10,000,000.00) for untreated depression and lack of mental health treatment.  Id. ¶ 9; Attach. 3 (TRT-NER-2016-05462).

29. On January 21, 2015, the Regional Office denied Milhouse's claim, finding no evidence of negligence, and noting that Psychological Services continues to provide him with the necessary services.  Id.

---

[3]  The abstract for Administrative Remedy No. 7715190F1, filed at the institution level on March 17, 2014, indicates that it concerns "admin. Detention conditions."  The remarks section notes that Milhouse "alleges on modofoed (sic) suicide watch in cell w/out observation & psych services.  Also, on the same tier with known threats against him, req. to be moved off tier."  Ex. A; Attach. 1 at 10.  Although this remedy may possibly have related to Milhouse's claims in the instant case, the record shows that he did not pursue this remedy beyond the institution level.  Id.

[4]  On December 28, 2015, Milhouse received a denial from BOP Central Office, but prior to that, he would have been able to treat the lack of a BOP Central Office response within 40 days of his November 3, 2014 filing as a denial.  Id. ¶ 7 n.3; see also 28 C.F.R. § 542.18.

30. The denial letter informed Milhouse that he could file suit in the appropriate United States District Court within six months of January 21, 2015. Id.

31. On August 11, 2014, Milhouse filed Administrative Tort Claim Number TRT-NER-2014-05640 at the BOP Northeast Regional Office averring, among other things, that he reported suffering depression and did not receive treatment. Id. ¶ 10; Attach. 4 (TRT-NER-2014-05640) where he requested a sum certain of $1,000,000.00. Id.

32. On February 2, 2015, the Regional Office denied the claim, finding no evidence Milhouse suffered a compensable loss as a result of staff negligence, and informing him that he could file suit in the appropriate United States District Court within six months of February 2, 2015. Id.

(Id. ¶¶ 26-32.)

## C.    Facts Regarding Plaintiff's Mental Health History

31. Jessica Sage, Psy.D., is the Chief Psychologist at USP Lewisburg. Ex. B (Declaration of Jessica Sage, PSY.D.) ¶ 1.

32. Defendant Sage's responsibilities include: overseeing the provision of comprehensive mental health services to inmates designated to USP Lewisburg. Id. ¶ 2.

33. Defendant Dr. Sage is familiar with Milhouse's mental health condition, plan of care, and treatment. Id. ¶ 2; Attach B (Bureau Electronic Medical Record [or] "BEMR").

34. Milhouse does not have a significant mental history. He is a Mental Health Care Level One[5] and is not currently prescribed any medication for psychiatric purposes. Id. ¶ 3.

35. Milhouse is diagnosed with Antisocial Personality Disorder ("ASPD") and does not have a current diagnosis of depression. Id.

36. ASPD represents a pattern of irresponsible and reckless behavior that violates the rights of other people or places them at risk of injury. Id.

---

[5] A Mental Health Care Level One is appropriate when the inmate shows no significant level of functional impairment associated with a mental illness and demonstrates no need for regular mental health interventions; and has no history of serious functional impairment due to mental illness or if a history of mental illness is present, the inmate has consistently demonstrated appropriate help-seeking behavior in response to any reemergence of symptoms. Id. ¶ 3 n.1.

37.  Individuals with this configuration of personality traits, including Milhouse, frequently violate rules, avoid responsibilities, and behave impulsively.  Id.

38.  Medication is not ordinarily used to treat ASPD and the Food and Drug Administration has not approved any medications to treat ASPD.  Id. ¶ 4.

39.  Milhouse's general stability without medication does not require regular mental health interventions by Psychology or Psychiatry Services.  Id.

40.  Milhouse has access to Psychology Services during routine rounds, which occur three times per week, and during his monthly Special Management Unit mental health reviews.  Id.

41.  Milhouse has an extensive history of contacts with Psychology Services, involving unfounded claims of sexual assaults and suicidal threats or gestures done in an effort to dictate the conditions of his confinement.  Id.

(Id. ¶¶ 31-41.)

### D.     Facts Regarding Defendants

2.  Defendant Nina S. Brathwaite, Ph.D., is a Clinical Psychologist at the Federal Correctional Institution in Florence, Colorado ("FCI-Florence-Medium") who previously served as a Staff Psychologist at USP Hazelton.  Ex. A (Declaration of Jonathan Kerr) ¶ 3.

3.  Defendant Cynthia Ivy, Psy.D., is currently a Staff Psychologist at the Federal Correctional Complex in Tucson, Arizona ("FCC Tucson") after previously serving as a Psychology predoctoral intern at USP Hazelton.  Id.

4.  Defendant Thomas Fanning, Psy.D., remains the Chief Psychologist at FCC Hazelton.  Id.

5.  Defendant John Pyles is employed at USP Hazelton as a Nurse Practitioner.  Id.

6.  Defendant Christopher Meyer is employed at USP Hazelton as a Physician Assistant.  Id.

7.  The aforementioned Defendants do not maintain a place of business or residence or otherwise conduct activity within the Commonwealth of Pennsylvania.  Id.

8.  Defendant Gregory Mims, MD, was formerly the Clinical Director at USP Hazelton.  Ex. A ¶ 3 n.1.  BOP no longer employs him, but he is a resident of Pittsburgh, Pennsylvania.  Id.

9. Defendant Laura Ennis, Psy.D., was previously employed as a Psychology predoctoral intern at USP Hazelton, but now resides in Pennsylvania and is employed as a Staff Psychologist at Allenwood United States Penitentiary in White Deer, Pennsylvania (USP Allenwood). Id.

(Id. ¶¶ 2-9.)

## IV.    DISCUSSION

In their motion to dismiss and for summary judgment, Defendants argue that the Court should dismiss Plaintiff's claims or, in the alternative, grant summary judgment in their favor for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies with respect to his claims under Bivens; (2) Plaintiff's FTCA claims against the United States are barred for failure to comply with 28 U.S.C. § 2675(a) and 28 U.S.C. § 2401(b); (3) the Court lacks personal jurisdiction over USP-Hazelton Defendants Brathwaite, Ivy, Fanning, Pyles, and Meyer; (4) venue is improper in light of acts and omissions allegedly occurring at USP-Hazelton; (5) Defendants were not personally involved in the alleged violations and Plaintiff has failed to state a claim; (6) Plaintiff failed to file a Certificate of Merit as required by Pennsylvania Rule of Civil Procedure 1042.3; and (7) Defendants are entitled to qualified immunity. After careful consideration, and for the reasons set forth below, the Court will grant summary judgment in favor of all Defendants and against Plaintiff.

### A.    Personal Jurisdiction

The Court will first address the issue of whether this Court has personal jurisdiction over Defendants from USP-Hazelton, Defendants Brathwaite, Ivy, Fanning, Pyles, and Meyer. The Defendants' statement of material facts reveals that Defendants Brathwaite, Ivy, Fanning, Pyles, and Meyer did not reside, work or have business dealings in Pennsylvania at the time of the incidents alleged in the amended complaint. They also presently do not reside, work or have

business dealings in Pennsylvania.  Their assertions relating to having insufficient contact with

Pennsylvania are supported by the unsworn declaration under penalty of perjury from Senior

CLC Attorney from the BOP, Jonathan Kerr.  (Doc. No. 116-1, Ex. A, Jonathan Kerr Decl.)

Plaintiff did not file any evidence that contradicts the evidence and statements submitted by

Defendants.

When a defendant properly raises a jurisdictional defense, a plaintiff is required to

"demonstrate sufficient contacts with the forum state to establish in personam jurisdiction."

North Penn. Gas v. Corning Natural Gas, 897 F.2d 687, 689 (3d Cir. 1990).

A court's personal jurisdiction over a defendant may be general or specific.  Specific

jurisdiction is found when a "non-resident defendant has 'purposefully directed' his activities at

a resident of the forum and the injury arises from or is related to those activities."  Gen. Elec. Co.

v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  General jurisdiction is present when a defendant

has "continuous and systematic contacts with the forum state."  Id. at 150.

Specific jurisdiction is inapplicable in this case because the allegations at issue directed at

Defendants Brathwaite, Ivy, Fanning, Pyles, and Meyer all relate to their alleged conduct outside

the state of Pennsylvania and that conduct was not directed at Plaintiff as a resident of

Pennsylvania at the time.  The allegations raised against these Defendants all relate to when

Plaintiff was housed at USP-Hazelton.  The only question before the Court is whether the Court

can exercise general jurisdiction over these Defendants.

Rule 4(e) of the Federal Rules of Civil Procedure authorizes personal jurisdiction over

non-residents to the extent permissible under the laws of the state where the district court sits.

Pennzoil Prods. Co. v. Coletti & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998).  The

Pennsylvania long-arm statute states in relevant part:

> [T]he jurisdiction of the tribunal of this Commonwealth shall extend . . . to the
> fullest extent allowed under the Constitution of the United States and may be
> based on the most minimum contact with this Commonwealth allowed under the
> Constitution of the United States.

42 Pa. Cons. Stat. Ann. § 5322(b).  Consequently, the exercise of personal jurisdiction over a

non-resident is proper so long as there is no violation of the due process clause of the Fourteenth

Amendment to the United States Constitution.  See Pennzoil Prods., 149 F.3d at 201.

The due process requirements are satisfied when a non-resident has "minimum contacts"

with the jurisdiction.  See Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945); Burger King Corp.

v. Rudzewicz, 471 U.S. 462 (1985).  The focus of the Court's inquiry must be on the activities of

the defendant in the forum state.  See Burger King Corp., 471 U.S. at 474-76.  The defendant

must have purposefully availed itself of the privilege of conducting business in the forum.  Id.

The United States Supreme Court in Burger King held that

> This "purposeful availment" requirement ensures that a defendant will not be
> haled into a jurisdiction solely as a result of "random," "fortuitous," or
> "attenuated" contacts, or of the "unilateral activity of another party or a third
> person."  Jurisdiction is proper, however, where the contacts proximately result
> from actions by the defendant himself that create a "substantial connection" with
> the forum State.  Thus, where the defendant "deliberately" has engaged in
> significant activities within a State, or has created "continuing obligations"
> between himself and residents of the forum, he manifestly has availed himself of
> the privilege of conducting business there, and because his activities are shielded
> by "the benefit and protections" of the forum's laws it is presumptively not
> unreasonable to require him to submit to the burdens of litigation in that forum as
> well.

Id. at 475-76 (internal citations omitted).  The important issue is whether the defendant's conduct

with and connection to the particular jurisdiction is such that the defendant would reasonably

anticipate being haled into court in the jurisdiction.

In the present case, Defendants Brathwaite, Ivy, Fanning, Pyles, and Meyer have

demonstrated that they have insignificant or no contact with the Commonwealth of

Pennsylvania. In responding to the brief and statement of material facts, Plaintiff did not (1)

claim that any of those Defendants worked or resided in Pennsylvania, or (2) submit any contrary

evidentiary materials. Consequently, Plaintiff's claims against Defendants Brathwaite, Ivy,

Fanning, Pyles, and Meyer will be dismissed for lack of personal jurisdiction.

**B.      FTCA Claims**

The United States argues that the FTCA claims should be dismissed because Plaintiff

failed to exhaust his administrative remedies prior to filing the present action. Under the FTCA,

a plaintiff may not bring suit against the United States "for injury or loss of property . . . caused

by the negligent or wrongful act or omission of any employee of the Government . . . unless the

claimant shall have first presented the claim to the appropriate Federal agency and his claim shall

have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). "It is a jurisdictional

prerequisite to a suit under the FTCA that a plaintiff have exhausted all administrative

remedies." Santos ex rel. Beato v. United States, 559 F.3d 189, 193 (3d Cir. 2009) (finding that

to make a claim under the FTCA, a claimant first must file the claim with the administrative

agency allegedly responsible for the injuries) (citations omitted). Further, a tort claim asserted

against the United States "shall be forever barred unless it is presented in writing to the

appropriate [f]ederal agency within two years after such claim accrues[,]" or if "action is begun

within six months after the date of mailing, by certified or registered mail, of notice of final

denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

In his amended complaint, Plaintiff asserts that, on February 28, 2014, while incarcerated

at USP-Hazelton, he attempted suicide because he had been receiving inadequate psychological

care at the facility. (Doc. No. 104 at 3.) Thereafter, Plaintiff alleges that his requests for

Psychology Services at USP-Lewisburg have been ignored and he has received no treatment,

despite his diagnosis of chronic depression. (Id. at 2.) In addition, he claims that he did not receive an initial psychological assessment at USP-Lewisburg and that his mental health records have been fabricated. (Id. at 2-3.)

Plaintiff did not file any Administrative Tort Claim related to the USP-Hazelton allegations set forth in his amended complaint. (Doc. No. 116 ¶ 26.) Plaintiff filed two Administrative Tort Claims related to the allegations in the amended complaint regarding USP-Lewisburg, but both claims were filed after June 2, 2014, when Plaintiff prematurely filed the original complaint. (Id. ¶ 27.) The details of the filings of those Administrative Tort Claims are as follows.

On July 31, 2014, Plaintiff filed Administrative Tort Claim Number TRT-NER-2014-05462 with the BOP Northeast Regional Office requesting $10,000,000 for harm he suffered as a result of untreated depression and lack of mental health treatment. (Id. ¶ 28.) On January 21, 2015, the Regional Office denied his claim, finding no evidence to support a claim of negligence, and noting that Psychology Services continues to provide him with the necessary services. (Id. ¶ 29.) The denial letter informed Plaintiff that he could file suit in the appropriate United States District Court within six months of January 21, 2015. (Id. ¶ 30.) Plaintiff filed amended complaints in this Court on April 6, 2016, (Doc. No. 42), and September 18, 2017 (Doc. No. 104).

On August 11, 2014, Plaintiff filed Administrative Tort Claim Number TRT-NER-2014-05640 with the BOP Northeast Regional Office requesting $1,000,000 for harm he suffered as a result of his untreated depression. (Doc. No. 116 ¶ 31.) On February 2, 2015, the Regional Office denied the claim, finding no evidence Plaintiff suffered a compensable loss as a result of staff negligence. (Id. ¶ 32.) The denial letter informed Plaintiff that he could file suit in the

appropriate United States District Court within six months of February 2, 2015. (Id.) Again, Plaintiff filed amended complaints in this Court on April 6, 2016, (Doc. No. 42), and September 18, 2017 (Doc. No. 104).

Here, the record conclusively establishes that Plaintiff either did not file FTCA claims relating to the allegations set forth in the amended complaint or, in the case that he did, the FTCA claims were filed well after the required six-month periods, in violation of 28 U.S.C. § 2675(a) and 28 U.S.C. § 2401(b), respectively. Consequently, this Court lacks jurisdiction to consider Plaintiff's claims under the FTCA, and summary judgment will be entered in favor of the United States and against Plaintiff.

### C. Bivens Claims

In light of the above, the only remaining claims are the Bivens claims asserted against Defendants Sage, Mink, O'Shaughnessy, Eigenbrode, Enigkt, Pigos, Edinger, Mims, Ennis, Ebbert, Jusino, O'Brien, and Odom. These Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to the claims set forth in the amended complaint.

Under the PLRA, exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 126 S. Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court. Woodford, 126 S. Ct. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004). The Bureau of Prisons' procedural requirements for the exhaustion of administrative remedies have been outlined in Section III.A, Statement of Material Facts. See supra Section III.A at 7-9.

Moreover, a prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. See Booth, 532 U.S. at 734; Nyhuis, 204 F.3d at 73. The PLRA requires exhaustion of all claims before a complaint is filed. 42 U.S.C. § 1997e(a). Subsequent exhaustion of administrative remedies or the filing of an amended complaint does not cure an exhaustion infirmity. See Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

Based on Defendants' statement of material facts and the evidentiary materials and the lack of opposing evidentiary materials, the Court concludes that there are no triable issues of material fact regarding the issue of exhaustion of administrative remedies. Specifically, Plaintiff failed to exhaust his administrative remedies fully with respect to Administrative Remedy Request Nos. 722984 and 791526 prior to filing his original complaint on June 2, 2014. See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (citing Ahmed, 297 F.3d at 209 & n.9) ("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."). Furthermore, the filing of an amended complaint after an

unexhausted claim is presented to the [C]ourt does not cure the infirmity.  See <u>Ahmed</u>, 297 F.3d

at 209 (providing that an inmate "cannot cure the defect in his action by the proffered

amendment of the complaint").  As a result, Defendants' motion will be granted, and summary

judgment will be entered in favor of Defendants and against Plaintiff.  An appropriate Order

follows.